BLANCHE, Judge.
Defendant-appellant, Saia Motor Freight Line, Inc., is appealing a judgment in the sum of $2,748.75 for its negligence in connection with the shipment of a cargo of green Spanish moss which it accepted from plaintiff-appellee, Lawrence Duet d/b/a Duet’s Moss Company.
On June 13, 1972, Saia Motor Freight Line, Inc. (hereinafter referred to as “Saia”), took a load of 36,650 pounds of green Spanish moss from Lawrence Duet d/b/a Duet’s Moss Company (hereinafter referred to as “Duet”) at Labadieville, Louisiana, and the load was consigned to Standard Process Laboratories, Inc. (hereinafter referred to as “Standard”), of Brookfield, Wisconsin. Saia delivered the trailer load within hours to Consolidated Freightways Corporation (hereinafter referred to as “Consolidated”) in Houston, Texas. On June 23, 1972, when Consolidated subsequently delivered the moss to Standard, it had spoiled and was unusable by the consignee. Standard had intended to use the moss for vitamins, food concentrates, and chlorophyll through an extrusion process.
Duet filed an action against both Saia and Consolidated for negligence in handling the freight, and it was stipulated that the correct amount of the damages, in the event of recovery, was $5,497.50. Prior to *264 the trial on its merits, Duet effected a. settlement with Consolidated and reserved his rights to proceed against Saia.
It is apparent from the record that uncured, green Spanish moss will deteriorate if not promptly utilized. Thus, the essential issue turns on whether Saia was negligent in handling this type of cargo.
In its brief on appeal Saia assigns three errors on the part of the trial court. The first error alleged is that the trial court did not consider the depositions of N. J. Chauvin, the driver of the Saia truck, and Charles Larose, the employee of Duet who assisted in the loading operations. These witnesses would have purportedly convinced the court that the moss was already spoiling before Saia picked it up and that it was improperly loaded. The trial judge had other convincing evidence on which he could rely to show that the moss was properly loaded and would not have spoiled had Saia been diligent in notifying the connecting carrier of the highly perishable nature of the cargo. We find that the trial judge committed no error in this regard and that he relied on convincing evidence produced in the record at trial.
The second error assigned by Saia is that the trial court erred in failing to find that Saia was not responsible for the delay in shipment caused by Consolidated. We are convinced that Saia did not adequately alert Consolidated concerning the urgency of transporting the cargo with dispatch. The record shows that Saia had a long-time relationship with Duet and was acquainted with the particular characteristics of green Spanish moss and its propensity to spoil. Consolidated was being used by Saia as a transshipper of green Spanish moss for the first time, and we believe there was a duty on Saia to impress this fact upon the connecting carrier. Jesse Ayers, Saia’s terminal manager, testified as follows:
“Q. At the time that you obtained this particular trailer from Consolidated Freightways, did you have any discussion with Consolidated Freight-ways as to their ability to deliver that trailer to Brooksfield [sic], Wisconsin?
“A. No, sir. The only thing we notified Consolidated was we had a load to pick up going there only.” (Record, P- 82)
Also assigned as error is the trial court’s failure to find that the plaintiff Duet was negligent in his actions in failing to notify the carrier of the perishable nature of their cargo and in failing to properly protect the cargo prior to shipment. Here we find no error and find convincing this testimony by Saia’s terminal manager Ayers:
“A. The freight bill has Spanish moss.
“Q. The freight bill has green Spanish moss.
“A. Green Spanish moss.
“Q. How do you explain the difference between the bill of lading and the other?
“A. Well, that, sir, the only way would be if Mr. Duet, or someone else called up to change it after the truck departed his place. That’s the only way it would have been changed.
“Q. So it’s possible, then, Mr. Duet had called you and given someone some instructions about that particular cargo?
“A. Well, sir, it had to be. Otherwise, the freight bill would have stated identical what the bill of lading states.” (Record, p. 81)
Therefore, the record supports the finding that Saia’s personnel were well acquainted with the difference between green Spanish moss, which deteriorates, and black moss, which does not and is shipped in bales. We are convinced that Duet discharged his duty to Saia in notifying it of the nature of the cargo.
As to the allegation that Duet failed to properly protect the cargo prior to shipment, we are unconvinced. The record supports the fact that the green Spanish moss was handled in the same manner as it had been handled prior to previous shipments and that this was the first time that the *265 moss had deteriorated prior to delivery to the consignee.
For the reasons outlined above, we affirm the judgment of the trial court, with costs to be cast to the defendant-appellant.
AFFIRMED.